Patrick H. Dwyer, SBN 137743
P.O. Box 1705, Penn Valley, CA 95946
Tel: (530) 432-5407; Fax: (530) 432-9122
Email: pdwyer@pdwyerlaw.com
Attorney for Plaintiff Christopher Howie

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christopher Joshua Howie, an individual, <br><br>     Plaintiff <br><br>     v. <br><br> Nevada County, California, a county government and operator of the Nevada County Sheriff's Department; and the following persons both as individuals and in their capacity as officials, employees or contractors of Nevada County: <br> Sheriff Keith Royal; <br> Deputy Adam Grizzell; <br> Deputy Jennifer McCormack; and <br> Does 1-25; <br>     And <br> Correctional Medical Group Companies, Inc.; and <br> Andrea Boucher; <br> Jessica Limme; <br> Jordan Dean; <br> Laurie Adams; and <br> Does 26 through 30; | CASE NO.: 2:18-CV- <br><br> **COMPLAINT FOR INDIVIDUAL, SUPERVISORY, AND MUNICIPAL VIOLATIONS OF 42 U.S.C. §1983; STATE LAW CLAIMS FOR INTENTIONAL INFLICTION OF PAIN AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, VIOLATIONS OF CALIFORNIA CIVIL CODE §52, RESPONDEAT SUPERIOR LIABILITY AND MEDICAL MALPRACTICE** <br><br> **JURY TRIAL DEMANDED** |

And

Officer John Hererra of the Grass
    Valley Police Department, City of
    Grass Valley; and

Does 31 to 40,
    Defendants.

## I.
## INTRODUCTION

This is a civil rights action arising out of the brutal and senseless use of force upon Plaintiff Christopher Joshua Howie by Nevada County Sheriff's Department ("NCSD") and Grass Valley Police Department ("GVPD") personnel that resulted in the serious displaced fracture of Plaintiff's right leg.  Despite the obvious injury to Plaintiff's leg, he was then put into wrist and ankle chains and dumped into a cell. Plaintiff pleaded for medical attention all night, and despite multiple visits by Correctional Medical Group Companies, Inc. ("CMGC") personnel, Plaintiff was denied any medical treatment.  The next morning, NCSD and CMGC personnel rolled Plaintiff out the back door of the jail in a wheel chair, set him down on the curb, and left him to call his own ambulance.

## II.
## JURISDICTION AND VENUE

1.    Jurisdiction over the federal causes of action under Title 42 U.S.C. §1983 are proper in this Court under 28 U.S.C. §1331.  Pendant Jurisdiction over the state causes of action is proper under Title 28 U.S.C. §1367(a) and Title 28 U.S.C. §1343(a)(3).

2.    Venue is proper in this Court under 28 U.S.C. §1391(b) because all of the defendants reside, and the acts complained of occurred, within the territorial

boundaries of this United States District Court.

3.    Intra-district venue is proper in the Sacramento Division of this Court under Local Rule 120(d) because the acts and omissions that are the basis of this complaint occurred within Nevada County.

### III.
### PARTIES

4.    Plaintiff Christopher Joshua Howie ("Howie") was a single male, age 41 at the time of the events alleged in this Complaint.  As of the date of filing of this Complaint, Plaintiff Howie resides at 16858 Lena Court, Grass Valley, CA 95945.

5.    Defendant Nevada County, California, established and operates the Nevada County Sheriff's Department ("NCSD") which is responsible for the staffing and operation of the Jail at 925 Maidu Ave, Nevada City, CA 95959 ("Jail", aka Wayne Brown Correctional Facility).  Plaintiff is informed and believes, and on that basis alleges, that the NCSD contracts with California Forensic Medical Group, Inc. to provide medical care to the inmates at the Jail.

6.    Defendant Keith Royal ("Royal") was the Sheriff and in command of the NCSD at the time of the incidents alleged below.

7.    Defendant Deputy Adam Grizzell ("Grizzell") was employed by the NCSD and was working as a deputy sheriff at the time of the events alleged below.

8.    Defendant Deputy Jennifer McCormack ("McCormack") was employed by the NCSD and was working as a correctional officer at the Jail in a supervisory capacity at the time of the events alleged below.

9.    Defendant Correctional Medical Group Companies, Inc. is a Delaware corporation qualified to do business in California (Corporation No. C3521984) with its principal executive office located at 3911 Sorrento Valley Boulevard, Suite 130, San Diego, CA 92121, and its principal business office at 2511 Garden Road, Suite

A160, Monterey, CA 93940.  Plaintiff is informed and believes, and on that basis alleges, that Correctional Medical Group Companies, Inc. either owns and/or controls a business in California named California Forensic Medical Group, Inc. or CFMG, Inc. (Corporation No. C1054341 FTB suspended) such that these two corporate entities are the alter ego of each other (collectively "CMGC").  Plaintiff is further informed and believes, and on that basis alleges, that Defendant Nevada County has had a contract with CMGC (or its alter ego CFMG) to provide medical services for detainees and inmates at Jail at all relevant times to this Complaint.

10.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Andrea Boucher ("Boucher") was employed by CMGC as a nurse with responsibility at the Jail for medical examination of detainees and inmates at the time of booking, during incarceration, and before release from the Jail.

11.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Jessica Limme ("Limme") was employed by CMGC as a nurse with responsibility at the Jail for medical examination and care of detainees and inmates at the time of booking, during incarceration, and before release from the Jail.

12.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Jordan Dean ("Dean") was employed by CMGC as a nurse with responsibility at the Jail for medical examination and care of detainees and inmates at the time of booking, during incarceration, and before release from the Jail.

13.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Laurie Adams ("Adams") was employed by CMGC as a nurse with responsibility at the Jail for medical examination and care of detainees and inmates at the time of booking, during incarceration, and before release from the Jail.

14.    Defendant Officer John Hererra ("Hererra") was employed by the Grass Valley Police Department ("GVPD") of the City of Grass Valley ("Grass Valley"), a

4

California municipal corporation located within Nevada County.  Based upon the Incident Report prepared by Defendants Grizzell and McCormack, a true and correct copy of which is attached hereto as Exhibit 2, Defendant Hererra was the law enforcement officer that arrested Plaintiff, brought Plaintiff to the Jail, and assisted Deputy Grizzell with the intake of Plaintiff on the relevant date.

15.     The true names and capacities of defendants sued herein as Does 1-40, inclusive, whether individual, corporate, or otherwise are unknown to Plaintiff who, therefore sues such defendants by such fictitious names. When their true names and capacities are ascertained, Plaintiff will amend this complaint by asserting their true names and capacities herein.  Plaintiff is informed, believes and thereon alleges, that at all times herein mentioned, all defendants, including Does 1 through 40, inclusive: (i) are qualified to do business in California, and/or did, in fact, do business in California; (ii) jointly perpetrated the acts herein with their co-defendants; (iii) were the successors in interest to, or agents, alter egos, principals, co-tenants, partners, joint venturers, or co-conspirators of their co-defendants in doing the things herein alleged; and/or (iv) were acting within the scope of their authority or in furtherance of a common scheme or design with the knowledge, permission, consent or ratification of their co-defendants in doing the things herein alleged, and therefore are liable, jointly and severally, for all damages and other relief or remedies sought by complainants in this action.

## IV.
## BACKGROUND ALLEGATIONS

### Duties of Nevada County, the NCSD, and CMGC

16.     Defendant Nevada County and the NCSD are obligated to have policies, practices, and procedures to: (a) prevent the unlawful use of force against detainees and inmates; and (b) provide timely and effective response to the medical needs of inmates ("PPPs").

17.    Defendant Nevada County and the NCSD are obligated to adequately train their deputy sheriffs and other correctional officers: (a) in the lawful use of force with detainees and inmates; and (b) the timely and effective response to the medical needs of detainees and inmates.

18.    Defendant Nevada County and the NCSD are obligated to adequately supervise their deputy sheriffs and correctional officers to verify the effectiveness and enforcement of the PPPs and training in the: (a) lawful use of force with detainees and inmates; and (b) the timely and effectively response to the medical needs of  detainees and inmates.

19.    Defendant Nevada County and the NCSD are obligated to have an adequate and effective "Chain of Command" so that incidents involving the excessive use of force and/or the inadequate provision of medical services occur, NCSD operational management learns about the incident and can take timely corrective action.

20.    Defendant Nevada County and NCSD personnel are obligated to prepare complete and truthful Incident Reports about: (a) the use of force at the Jail; and (b) the provision of effective medical care for a detainee or inmate that has sustained a serious injury.

21.    Defendant CMGC, as a contractor to Defendant Nevada County for medical services for all detainees and inmates at the Jail, is a state actor performing this traditionally governmental function.  Consequently, CMGC is obligated to either follow the PPPs adopted by Defendants Nevada County and the NCSD for providing medical services and/or to have its own comparable policies, practices, and procedures for medical services that meet the same constitutional standards.

22.    The obligations and duties set forth in paragraphs 16 to 21 will hereafter be collectively referred to as the "Supervisory Duties".

23.    The personnel employed by Defendant CMGC to perform its medical services

1   at the Jail are state actors performing this traditional governmental function.

2   Consequently, CMGC personnel are obligated to perform their medical service

3   duties in a manner that meets constitutional standards.

4   24.   Defendant Nevada County and the NCSD maintain a video surveillance

5   system at the Jail ("VSS").   Plaintiff is informed and believes, and on that basis

6   alleges, that the VSS was installed, in part, to verify that the PPPs are being

7   followed, that training has been adequate, and that supervisors are monitoring the

8   conduct of deputies and correctional officers in the lawful use of force and the

9   provision of timely and effective medical response for all inmates.   Plaintiff is

10   further informed and believes, and on that basis alleges, that the VSS also provides

11   a ready means for the NCSD to investigate and prepare Incident Reports about the

12   use of force and the provision of medical care at the Jail.

13                    **The Unlawful Use of Force Against Plaintiff**

14   25.   On January 11, 2018, Plaintiff was arrested by Defendant Officer John

15   Herrera of the GVPD and transported to the Nevada County Jail.

16   26.   The events described in following paragraphs 27-34 are captured in a multi-

17   camera video that was produced to Plaintiff, a true and correct copy of which has

18   been filed with the Court as Exhibit 3 to this Complaint.   Hereafter, references to

19   this video will include a time stamp; however, all time references in the Complaint

20   are only approximate.   The video in Exhibit 3 concludes at approximately 17:20:47

21   on January 11, 2018.   Plaintiff is informed and believes, and on that basis alleges

22   that Defendants Nevada County and the NCSD are in possession of additional video

23   showing Plaintiff for the balance of his time at the Jail.

24   27.   Plaintiff was led into the Jail and taken towards the booking area by

25   Defendant Deputy Adam Grizzell.   Following Deputy Grizzell and Plaintiff into the

26   Jail was Defendant Officer John Hererra.   Plaintiff was at all times handcuffed

27

28                                                    7

1  behind his back and Plaintiff was calmly cooperating, not resisting, these officers.

2  Ex. 3, approximately 17:10 to 17:11:45.

3  28.     As Plaintiff was being marched down the pre-booking hallway towards

4  booking area, the two escorting officers stopped him and turned him towards a

5  padded section of the wall in the pre-booking hallway.  Plaintiff complied.  Then

6  Defendant Grizzell forcefully pushed Plaintiff's head into the wall.   Plaintiff's face

7  bounced off the padding and he turned and objected to Defendant Grizzell.

8  Defendant Grizzell then violently pushed Plaintiff on the back of his head and

9  upper back, pressing his face into the wall.  Ex. 3, approximately 17:11:45 to

10  17:11:54.  At no time did Defendant Hererra attempt to stop Defendant Grizzell

11  from this use of excessive force against Plaintiff.

12  29.     Plaintiff was frightened and angered by the actions of Defendant Grizzell in

13  slamming his head into the wall and he instinctively stiffened in resistance.  After a

14  few seconds, Plaintiff turned his head towards Defendant Grizzell and told him to

15  stop smashing his face into the wall.  Ex. 3, approximately 17:11:55 to 17:12:00.

16  Defendant Grizzell then grabbed Plaintiff's "beenie", pulled it over his head, and

17  then grabbed Plaintiff's handcuffed hands and pulled them up towards Plaintiff's

18  head.  Defendant Grizzell then put all of his weight on top of Plaintiff, forcing

19  Plaintiff to the floor.  This all happened in just a few seconds.  As Plaintiff went

20  down, Plaintiff felt his right leg breaking.  See Ex. 3, approximately 17:12:00 to

21  17:12:06.  At no time did Defendant Hererra attempt to stop Defendant Grizzell

22  from this use of excessive force against Plaintiff.  As soon as Plaintiff hit the

23  ground, Defendant Hererra grabbed Plaintiff by the leg and assisted Deputy

24  Grizzell in further use of unnecessary and excessive force putting Plaintiff into leg

25  and wrist chains.  See Ex. 3, approximately 17:12:07 to 17:12:15.

26  30.     Within approximately 8 seconds of being taken to the ground by Defendant

27

28                                              8

Grizzell, two additional deputies/correctional officers arrived in the pre-booking hallway.  Plaintiff is informed and believes, and on that basis alleges, that these deputies/correctional officers were employed by Defendant NCSD.  Hereafter, these deputies/correctional officers will be referred to as Does 1-2. See Ex. 3, approximately 17:12:07 to 17:12:15.

31.     Within approximately 30 seconds after Does 1-2 arrive, another two deputies/correctional officers arrived in the pre-booking hallway.  Plaintiff is informed and believes, and on that basis alleges, that these deputies/correctional officers were employed by Defendant NCSD. Hereafter, these  deputies/correctional officers will hereafter be referred to as Does 3-4.  See Ex. 3, approximately 17:12:06 to 17:12:45.

32.     Within another approximately 30 seconds, another two deputies/correctional officers arrived in the pre-booking hallway. Plaintiff is informed and believes, and on that basis alleges, that these deputies/correctional officers were employed by Defendant NCSD. Hereafter, these deputies will hereafter be referred to as Does 5 through 6.   See Ex. 3, approximately 17:12:36 to 17:13:15.

### The Failure to Provide Medical Care

33.     Defendants Grizzell, Herrara, and Does 1-6 ignored the Plaintiff's cries of pain and help for his leg and failed to summon emergency medical help for Plaintiff. Instead, they removed the handcuffs that kept Plaintiff's hands behind his back at the time of the incident (takedown) and replaced the handcuffs with wrist and angle chains.

34.     Plaintiff was then picked up off the floor and dragged, in ankle and wrist chains, from the pre-booking hallway to a bench approximately 10-15 feet further down the pre-booking hallway.  See Ex. 3, approximately 17:15:10 to 17:15:50. Plaintiff could not stand up by himself and his right leg could not support his

weight.  Defendants Grizzell, Herrerra, and Does 1-6 continued to ignore Plaintiff's cries of pain and his inability to support his own weight and failed to summon emergency medical help for Plaintiff.

35.    After about four minutes (which included several failed attempts to walk), Plaintiff was again moved by Defendants Grizzell, Herrerra, and Does 1-6 to some type of holding/sobering type cell where Plaintiff was dumped on his knees with ankle and wrist chains still on.  See Ex. 3, approximately 17:19:00 to 17:20:40.

36.    Plaintiff is informed and believes that the document attached hereto as Exhibit 4, is a true and correct copy of medical records for Plaintiff kept by Defendant CMGC at the Jail.   According to Ex 2, page 15 (labeled "Customs Flows in the upper left hand corner and numbered as "Howie 32" in lower right hand corner), Defendant Jessica Limme first saw Plaintiff at approximately 6:52 pm on January 11, 2018, which was approximately one hour and 40 minutes after the breaking of Plaintiff's right leg.  Defendant Jessica Limme made a series of notations that Plaintiff was "Awake and alert" and "Appears Well" and had a "Steady" gait.  During this medical visit Plaintiff told Defendant Jessica Limme about the injury to his right leg, but she ignored his pain, the swelling in his leg, his inability to stand or walk, and his request for medical assistance.  Plaintiff is informed and believes, and on that basis alleges, that these notations by Defendant Jessica Limme were knowingly false and/or incomplete.

37.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Limme was accompanied at this medical visit by Defendant Does 11-12 who were deputies/correctional officers employed by Defendant NCSD.  Plaintiff is further informed and believes, and on that basis alleges, that Defendant Does 11-12 were aware of Plaintiffs' injuries and ignored his obvious need for emergency medical care.

38.    According to Ex 4, page 16 (numbered as "Howie 33"), Defendant Andrea

10

Boucher first saw Plaintiff at approximately 9:17 pm on January 11, 2018, which was approximately four hours after the breaking of Plaintiff's right leg.  Plaintiff recalls a female nurse coming to the sobering cell at about this time (but does not recall her name), along with a female deputy or officer whom he believes, and on that basis alleges, was Defendant McCormack.  Plaintiff is informed and believes, and on that basis further alleges, that these two Defendants assisted Plaintiff out of the cell and sat him on a nearby chair; however, other Defendant Does may have been present.  Plaintiff alleges that, despite the obvious serious injury to his right leg, Defendants Boucher and McCormack ignored Plaintiff's need for emergency medical assistance.  Defendant Andrea Boucher made a series of notations in Plaintiff's medical record that he was "Lethargic but responds to verbal stimuli" and was "Non-Cooperative".  There are no notations about Plaintiff under the headings "General Appearance" or "Gait" as observed by Defendant Jessica Limme.  Plaintiff's serious leg injury and his inability to stand or walk would have been obvious to anyone.  Plaintiff is informed and believes, and on that basis alleges, that these notations by Defendant Andrea Boucher were knowingly false and/or incomplete.

39.     According to Ex 4, pages 16-17 (numbered as "Howie 33-34"), Defendant Andrea Boucher saw Plaintiff again at approximately 1:23 am on January 12, 2018, which was approximately eight hours and 15 minutes after the breaking of Plaintiff's right leg.  Defendant Andrea Boucher made a series of notations that Plaintiff was "Awake and alert" and "Appears Well", but his gait was "*Unstable".  Plaintiff does not know at this time what the asterisk in front of "Unstable" means or references.  During this medical visit Plaintiff again told Defendant Andrea Boucher about the injury to his right leg, but she ignored his pain, swelling, and request for medical assistance.  Plaintiff is informed and believes, and on that basis alleges, that these notations by Defendant Andrea Boucher were knowingly false

and/or incomplete.  Defendant Andrea Boucher then cleared Plaintiff to be released from the sobering cell.  See Ex 4, page 17 (numbered as "Howie 34").

40.     Plaintiff recalls a visit to his cell (at about the same as Defendant Andrea Boucher alleged in paragraph 39) time by a male and female deputy/correctional officer who will hereafter be designated as unidentified Defendants Does 13 and 14. Plaintiff is informed and believes, and on that basis alleges, that unidentified Defendants Does 13-14  were deputies or correctional officers employed by NCSD. These two Defendants wanted to move Plaintiff to a cell in the booking area. Plaintiff informed them about his injury and that he could not walk. Defendant Does 13-14 ignored Plaintiff's obvious need for emergency medical care (including the need for a wheel chair) and proceeded to move Plaintiff to another cell by supporting Plaintiff on each side and making Plaintiff hop on one leg.  This change in cells further exasperated Plaintiff's injuries, pain, and suffering.

41.     Sometime the following morning (estimated somewhere between 9 to 10 am), Plaintiff was helped out of his cell and put into a wheelchair by an unidentified Defendant nurse Doe 26 and an unidentified Defendant deputy or officer Doe 11. Plaintiff was then taken to the booking area.  Plaintiff recalls asking Defendant McCormack if he could have a ride to the hospital to obtain treatment for his leg. Defendant McCormack, along with an unidentified Defendant nurse (possibly Doe 26 or a different nurse, Doe 27), said something to the effect of "don't see why not". Plaintiff understood this to mean "yes" to his request and he then sat in the wheelchair and waited to be transported to the local emergency room.

42.     According to Ex 4, pages 10 - 14 (numbered as "Howie 27 - 31"), Defendant Jordan Dean examined Plaintiff at approximately 10:07 am on January 12, 2018. Defendant Jordan Dean made a series of notations about Plaintiff's medical condition.  At the time of this medical exam, Plaintiff was unable to stand on his feet, his right leg was very swollen, and he was experiencing serious pain.  Plaintiff

again asked for transport to Sierra Nevada Memorial Hospital for emergency treatment, but this request was ignored by Defendant Dean.  On Exhibit 4, page 11 (numbered "Howie 28"), Defendant Dean recorded "rt knee pain" under a notation that reads "NOTE: INCLUDE CURRENT SYMPTOMS; ANY E.D. VISIT, ACUTE INFECTION, OR TRAUMA IN PAST WEEK".  However, under the category for "Recent Trauma with LOC within past 24-48 hours?" no mention was made of Plaintiff's right leg.  On Ex 4, page 13  (numbered "Howie 30"), Defendant Dean recorded "rt knee" under the category "Swelling" and "Yes" under the category "Pain?".  However, on Exhibit 4 page 14 (numbered "Howie 31"), Defendant Dean recorded "0/10" under the category "Pain scale /10".  Finally, Defendant Dean recorded on Exhibit 4 page 14  (numbered "Howie 31") "REFUSE PATIENT AND REFER TO ED FOR EVALUATION (pt is getting released and going to hospital).  Defendant Dean completed her medical review, but did not summon medical assistance or transport for Plaintiff to the local emergency room.

43.     Sometime after the medical review and release by Defendant Dean, Plaintiff again asked Defendants McCormack and an unidentified Defendant officer Doe 15 for a ride to the local hospital.  Plaintiff is informed and believes, and on that basis alleges that Defendant McCormack checked with her superior officers at the Jail about taking Plaintiff to the local hospital emergency room.  However, Defendant McCormack's statement indicating to Plaintiff that she would arrange a ride to the hospital (as first alleged in paragraph 41) was apparently countermanded by Defendant McCormack's NCSD supervisors, hereafter named as Defendant Does 16-18.  Plaintiff is informed and believes, and on that basis alleges, that Defendants McCormack and Doe 15 took no further action to get this order countermanded or to get Plaintiff transported to an emergency room.

44.  Plaintiff waited in his wheelchair for a long time, but at about 1:00 pm on January 12, 2018, Defendants McCormack and Defendant Does 19-20 rolled

Plaintiff out the back door of the Jail in the wheelchair.  Defendants McCormack and Defendant Does 19-20 then took Plaintiff out of the wheelchair and sat him on a street curb in back of the Jail.  Defendants McCormack and Does 19-20 gave Plaintiff no further assistance and returned into the Jail.

45.     Plaintiff used his cell phone to call a taxi to take him to the hospital.  When the taxi came (a "Fast" Taxi driven by a Mr. Sean Kennedy), Plaintiff was unable to get into the vehicle, even with the driver's assistance.  The taxi driver, Mr. Kennedy, saw how badly Plaintiff was hurt and called an ambulance for Plaintiff.

46.     The ambulance and fire department arrived shortly thereafter and Plaintiff was transported to Sierra Nevada Memorial Hospital where he received emergency treatment and stabilization for his right leg.  X-rays revealed the break in his right leg, below the knee, with substantial displacement of the bone.  Plaintiff was referred to an orthopedic surgeon for further surgical treatment.  Subsequently, Plaintiff received surgical repair of his broken leg and Plaintiff has been receiving appropriate follow-up care.

## The Cover Up

47.     The Incident Report, a true and correct copy of which is attached hereto as Exhibit 2, about the use of force on Plaintiff was reviewed and approved by Defendant McCormack and/or Defendants Royal and/or Does 21-25.  The Incident report gives a false and/or misleading statement of the events purported to be described therein, in particular, about the use of force against Plaintiff.  For example, the Incident Report states that there was no injury to Plaintiff at any time up to the time he was placed in a sobering cell.

48.     Plaintiff is informed and believes, and on that basis alleges, that at all relevant times Defendants Royal, McCormack and Does 21-25 had full access to the Incident Report and to the VSS.  In addition, as alleged in paragraphs 38, 41, 43

14

to 44, Defendant McCormack personally observed Plaintiff's injured right leg. Plaintiff is further informed and believes, and on that basis alleges, that despite the obvious fact that the VSS shows the excessive use of force by Defendant Grizzell, and further, that Defendant McCormack personally witnessed Plaintiff's inability to walk, Defendants Royal, McCormack and Does 21-25 failed to correct the Incident Report to accurately reflects the relevant events, failed to conduct an independent investigation of the incident, and failed to otherwise adequately and properly perform their Supervisory Duties.

## The Timely Filing of a Tort Claim

49.     On or about May 30, 2018, Plaintiff filed a claim against Nevada County for the injuries he suffered as described in paragraphs 26-48.  A true and correct copy of this tort claim is attached hereto as Exhibit 1A.

50.     On or about June 22, 2018, Nevada County served by mail a letter of rejection of Plaintiff's claim dated June 20, 2018.  A true and correct copy of this rejection is attached hereto as Exhibit 1B.

V

## FIRST CAUSE OF ACTION

### Defendants Adam Grizzell, John Hererra and Does 1-10

#### Individual Liability for Violation of Plaintiff's
#### Constitutional Rights Under 42 U.S.C . §1983
#### (Unlawful Use of Force)

51.     Plaintiff hereby incorporates by reference paragraphs 1 through 50, inclusive, as though set forth fully herein.

52.     Defendants Grizzell, Hererra, and Does 1-10 committed acts of unprovoked and unwarranted excessive force against Plaintiff Howie alleged in paragraphs 27-32 in violation of his right under the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution.

53.     The foregoing conduct of Defendants Grizzell, Hererra, and Does 1-10 were acts and omissions under the color of state law that was the direct and proximate cause of the violation of the constitutional rights of Plaintiff Howie.

54.     As a direct and proximate result of the wrongful conduct of Defendants Grizzell, Hererra, and Does 1-10 as set forth above, Plaintiff Howie has sustained general damages of an estimated $1,500,000, according to proof, including, but not limited to: (a) the serious physical pain and suffering from the injuries to his body; (b) the severe emotional and mental distress caused by the rough handling, demeaning taunts, physical beating, and having his leg broken while handcuffed, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) the cost of medical treatment; and (d) the cost of emotional and psychological therapy.

55.     As a direct and proximate result of the foregoing conduct of Defendants Grizzell, Hererra, and Does 1-10, Plaintiff Howie has been forced to file this action under 42 U.S.C. §1983, and is entitled to recover his attorneys fees and costs under

42 U.S.C. §1988.

56.     The foregoing acts and omissions of Defendant Grizzell, Hererra, and Does 1 to 10 were committed with unbridled malice that was despicable and done with intentional disregard for Plaintiff Howie's physical and mental person.  As a result, punitive damages should be awarded against Defendants Grizzell, Hererra, and Does 1 to 10.

## SECOND CAUSE OF ACTION

### Defendants  Adam Grizzell, John Hererra and Does 1-10

### Individual Liability for Violation of Plaintiff's Constitutional Rights Under 42 U.S.C . §1983
### (Deliberate and Callous Disregard for Plaintiff's Emergency Medical Problem)

57.     Plaintiff hereby incorporates by reference paragraphs 1 through 50, inclusive, as though set forth fully herein.

58.     Defendants Grizzell, Hererra, and Does 1-10 were aware of Plaintiff's medical problem and his need for emergency medical care as alleged in paragraphs 33-35.  However, these defendants deliberately and callously disregarded Plaintiff's emergency medical needs in violation of the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution.

59.     The foregoing conduct of Defendants Grizzell, Hererra, and Does 1-10 were acts and omissions under the color of state law that was the direct and proximate cause of the violation of the constitutional rights of Plaintiff Howie.

60.     As a direct and proximate result of the wrongful conduct of Defendants Grizzell, Hererra, and Does 1-10 as set forth above, Plaintiff Howie has sustained general damages of an estimated $1,500,000, according to proof, including, but not limited to: (a) the serious physical pain and suffering from the injuries to his body; (b) the severe emotional and mental distress caused by the rough handling, demeaning taunts, physical beating, and having his leg broken while handcuffed,

1   including feelings of helplessness, anxiety, humiliation, and the loss of a sense of

2   security, dignity, and pride; (c) the cost of medical treatment; and (d) the cost of

3   emotional and psychological therapy.

4   61.   As a direct and proximate result of the foregoing conduct of Defendants

5   Grizzell, Hererra, and Does 1-10, Plaintiff Howie has been forced to file this action

6   under 42 U.S.C. §1983, and is entitled to recover his attorneys fees and costs under

7   42 U.S.C. §1988.

8   62.   The foregoing acts and omissions of Defendant Grizzell, Hererra, and Does 1-

9   10 were committed with unbridled malice that was despicable and done with

10  intentional disregard for Plaintiff Howie's physical and mental person.  As a result,

11  punitive damages should be awarded against Defendants Grizzell, Hererra, and

12  Does 1-10.

### THIRD CAUSE OF ACTION

### Defendants Jennifer McCormack and Does 11 through 15

### Individual Liability for Violation of Plaintiff's
### Constitutional Rights Under 42 U.S.C . §1983
### (Deliberate and Callous Disregard for Plaintiff's Emergency Medical Problem)

17  63.   Plaintiff hereby incorporates by reference paragraphs 1 through 50, inclusive,

18  as though set forth fully herein.

19  64.   As alleged in paragraphs 36-44, Defendants McCormack and Does 11-20

20  deliberately and callously disregarded Plaintiff's obvious serious injuries and

21  emergency medical needs in violation of the Fourth, Eighth and Fourteenth

22  Amendments to the U.S. Constitution.  Instead, Defendant McCormack and Does

23  11-20 left Plaintiff in a holding cell for approximately eight hours and then in a

24  regular cell for approximately another eight hours.  The next morning, Defendants

25  McCormack and Does 11-20 refused to transport Plaintiff to the emergency room,

26  and instead, put Plaintiff into a wheelchair for several hours and then rolled him

out the back door of the Jail and left him on a curbside to fend for himself.

65.     The foregoing conduct of Defendants McCormack and Does 11-20 were acts and omissions under the color of state law that was the direct and proximate cause of the violation of the constitutional rights of Plaintiff Howie.

66.     As a direct and proximate result of the wrongful conduct of Defendants McCormack and Does 11-20 as set forth above, Plaintiff Howie has sustained general damages of an estimated $1,500,000, according to proof, including, but not limited to: (a) the serious physical pain and suffering from the injuries to his body; (b) the severe emotional and mental distress caused by the rough handling, demeaning taunts, physical beating, and having his leg broken while handcuffed, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) the cost of medical treatment; and (d) the cost of emotional and psychological therapy.

67.     As a direct and proximate result of the foregoing conduct of Defendants McCormack and Does 11-20, Plaintiff Howie has been forced to file this action under 42 U.S.C. §1983, and is entitled to recover his attorneys fees and costs under 42 U.S.C. §1988.

68.     The foregoing acts and omissions of Defendants McCormack and Does 11-15 were committed with unbridled malice that was despicable and done with intentional disregard for Plaintiff Howie's physical and mental person.  As a result, punitive damages should be awarded against Defendants McCormack and Does 11 through 20.

# FOURTH CAUSE OF ACTION

**Defendants Sheriff Keith Royal, Jennifer McCormack, and Does 16-20**
**Failure to Perform Supervisory Duties  Under 42 U.S.C . §1983**
**(Supervisory Liability In Their Individual Capacities)**

69.     Plaintiff hereby incorporates by reference paragraphs 1 through 50, inclusive, as though set forth fully herein.

70.     Defendants Royal, Jennifer McCormack, and Does 21-25 are Nevada County and/or NCSD employees or contractors that at all relevant times alleged herein, had responsibility for performing the Supervisory Duties as alleged in paragraphs 17-23, including the supervision of Defendant Grizzell and Does 1-20.

71.     At all relevant times, Defendants Royal, McCormack, and Does 16-20 had all necessary means and opportunity for performing the Supervisory Duties.

72.     Defendants Royal, McCormack, and Does 21-25 failed, in whole or in part, to perform their Supervisory Duties.  As a direct consequence of such failure, Plaintiff was: (a) subjected to unprovoked and unwarranted excessive force against; and (b) denied timely medical services for the injuries he suffered as a result of the excessive use of force, both of which are violations of his right under the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution.

73.     The foregoing conduct of Defendants Royal, McCormack, and Does 21-25 were acts and omissions under the color of state law that was the direct and proximate cause of the violation of the constitutional rights of Plaintiff Howie.

74.     As a direct and proximate result of the wrongful conduct of Defendants Royal, McCormack, and Does 16-20 as set forth above, Plaintiff Howie has sustained general damages of an estimated $1,500,000, according to proof, including, but not limited to: (a) the serious physical pain and suffering from the injuries to his body; (b) the severe emotional and mental distress caused by the rough handling, demeaning taunts, physical beating, and having his leg broken

while handcuffed, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) the cost of medical treatment; and (d) the cost of emotional and psychological therapy.

75.     As a direct and proximate result of the foregoing conduct of Defendants Royal, McCormack, and Does 21-25, Plaintiff Howie has been forced to file this action under 42 U.S.C. §1983, and is entitled to recover his attorneys fees and costs under 42 U.S.C. §1988.

76.     The foregoing acts and omissions of Defendants Royal, McCormack, and Does 21-25  were committed with unbridled malice that was despicable and done with intentional disregard for Plaintiff Howie's physical and mental person.  As a result, punitive damages should be awarded against Defendants Royal, McCormack, and Does 21-25.

## FIFTH CAUSE OF ACTION

**Defendant Sheriff Keith Royal**
**Supervisory Liability In His Official Capacity Under 42 U.S.C. §1983**
**(Failure to Lawfully Administer the Jail)**

77.     Plaintiff hereby incorporates by reference paragraphs 1 through 50, inclusive, as though set forth fully herein.

78.     Defendant Royal, as Sheriff, was responsible for the adoption and enforcement of the PPPs at the Jail as set forth in paragraphs 16-22.  Defendant Keith Royal, as Sheriff, was further responsible for the creation of a chain of command that enforces such PPPs and that promptly and accurately records and then reports accurate information about the use of force and the provision of timely medical care up the chain of command.

79.     Plaintiff is informed and believes, and on that basis alleges, that Defendant Royal, as Sheriff, failed to adopt and/or failed to enforce PPPs as set forth in paragraphs 16-22.  Plaintiff is further informed and believes, and on that basis

alleges, that Defendant Royal, as Sheriff, failed to properly train and monitor NCSD personnel in the application of the PPPs that did exist for use of force by NCSD and the provision of timely medical care to detainees and inmates as set forth in paragraphs 16-22.

80.   Defendant Royal, as Sheriff, failed, in whole or in part, to establish an appropriate chain of command for the enforcement of the PPPs and/or to otherwise perform his Supervisory Duties as set forth in paragraphs 16-22.  As a direct consequence of such failure, Plaintiff was: (a) subjected to unlawful excessive force; and (b) denied timely medical services for the injuries he suffered as a result of the excessive use of force.

81.   The foregoing conduct of Defendant Royal, as Sheriff, constituted acts and omissions under the color of state law that was the direct and proximate cause of the violation of the constitutional rights of Plaintiff Howie.

82.   As a direct and proximate result of the wrongful conduct of Defendant Royal as set forth above, Plaintiff Howie has sustained general damages of an estimated $1,500,000, according to proof, including, but not limited to: (a) the serious physical pain and suffering from the injuries to his body; (b) the severe emotional and mental distress caused by the rough handling, demeaning taunts, physical beating, and having his leg broken while handcuffed, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) the cost of medical treatment; and (d) the cost of emotional and psychological therapy.

83.   As a direct and proximate result of the foregoing conduct of Defendant Royal, as Sheriff, Plaintiff Howie has been forced to file this action under 42 U.S.C. §1983, and is entitled to recover his attorneys fees and costs under 42 U.S.C. §1988.

84.   The foregoing acts and omissions of Defendant Royal, as Sheriff, were committed with unbridled malice that was despicable and done with intentional

disregard for Plaintiff Howie's physical and mental person.  As a result, punitive damages should be awarded against Defendant Royal.

## SIXTH CAUSE OF ACTION

### Defendant Nevada County
### Municipal Liability for Violation of Plaintiff's Constitutional Rights
### (Deliberate and Callous Disregard for Inmate Medical Problems)

85.   Plaintiff hereby incorporates by reference paragraphs 1 through 50, inclusive, as though set forth fully herein.

86.   Defendant Nevada County has failed to adequately establish policies and procedures regarding the timely and effective provision of medical services for inmates that are adequate for protecting the right of inmates to medical care.

87.   Defendant Nevada County has failed to adequately train its personnel regarding the timely and effective provision of medical care for inmates.

88.   Defendant Nevada County has failed to adequately monitor or enforce policies and procedures for the timely and effective provision of medical care for inmates.

89.   Defendant Nevada County has failed to adequately supervise its personnel regarding the timely and effective provision of medical care for inmates.

90.   Plaintiff is aware of other instances of deliberate and callous indifference by Defendant Nevada County to the medical needs of other inmates, including the tort claim filed by Sonya Cheyenne Cavendar on or about November 13, 2018, a true and correct copy of which as attached hereto as Exhibit 5.   The deliberate and callous indifference experienced by Plaintiff and Ms. Cavender demonstrate a persistent pattern of wrongful conduct by Defendant Nevada County.

91.   It was known and/or obvious to Defendant Nevada County that the acts and omissions described in paragraphs 86-90 would be likely to cause serious violation of the constitutional rights of inmates to timely and effective medical care.

92.     The acts and omissions in paragraphs 865-90 were done under the color of state law and they were the direct and proximate cause of the violation of the constitutional rights of Plaintiff.  These acts and omissions continued for at least a year prior to the institution of this action and Plaintiff is informed and believes, and on that basis alleges, that these acts and omissions continue until the present time. As a consequence, Defendant Nevada County's acts and omissions in paragraphs 86-90 constitute deliberate indifference to, and a callous disregard for, the constitutional rights of inmates in the Nevada County Jail.

93.     As a direct and proximate result of the wrongful acts and omissions of Defendant Nevada County as set forth above, Plaintiff has sustained general damages of an estimated $1,500,000, according to proof, including, but not limited to: (a) the serious physical pain and suffering from the daily repeated injury to his body; (b) the severe emotional and mental distress caused by the daily infliction of physical and psychological pain, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) the cost of medical treatment; (d) the cost of emotional and psychological therapy; and (e) the loss of future economic damages to permanent physical disability.

94.     As a direct and proximate result of the foregoing conduct of Defendant Nevada County, Plaintiff has been forced to file this action under 42 U.S.C. §1983, and is entitled to recover his attorneys fees and costs under 42 U.S.C. §1988.

## SEVENTH CAUSE OF ACTION

**Defendants Andrea Boucher, Jessica Limme, Jordan Dean,
Laurie Adams, and Does 21 through 25**

**Individual Liability for Violation of Plaintiff's Constitutional Rights
(Deliberate and Callous Disregard for Plaintiff's Known Medical Problem)
Under 42 U.S.C . §1983**

95.    Plaintiff hereby incorporates by reference paragraphs 1 through 50, inclusive, as though set forth fully herein.

96.    Defendants Boucher, Limme, Dean, Adams, and Does 26 through 30 became aware of Plaintiff's medical problem and his need for timely medical care as alleged in paragraphs 36-44.  However, Defendants Boucher, Limme, Dean, Adams, and Does 26 through 30 deliberately and callously disregarded Plaintiff's medical needs, thereby denying Plaintiff his constitutional right to timely and effective medical care under the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution.

97.    The foregoing conduct of Defendants Boucher, Limme, Dean, Adams, and Does 26 through 30 were acts and omissions under the color of state law that were the direct and proximate cause of the violation of the constitutional rights of Plaintiff Howie.

98.    As a direct and proximate result of the wrongful conduct of Defendants Boucher, Limme, Dean, Adams, and Does 26 through 30 as set forth above, Plaintiff Howie has sustained general damages of an estimated $1,500,000, according to proof, including, but not limited to: (a) the serious physical pain and suffering from the injuries to his body; (b) the severe emotional and mental distress caused by the rough handling, demeaning taunts, and being beaten and having his leg broken while handcuffed, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) the cost of medical treatment; and

1   (d) the cost of emotional and psychological therapy.

2   99.    As a direct and proximate result of the foregoing conduct of Defendants

3   Boucher, Limme, Dean, Adams, and Does 26 through 30, Plaintiff has been forced

4   to file this action under 42 U.S.C. §1983, and is entitled to recover his attorneys fees

5   and costs under 42 U.S.C. §1988.

6   100.    The foregoing acts and omissions of Defendants Boucher, Limme, Dean,

7   Adams, and Does 26 through 30 were committed with unbridled malice that was

8   despicable and done with intentional disregard for Plaintiff Howie's physical and

9   mental person.  As a result, punitive damages should be awarded against

10  Defendants Boucher, Limme, Dean, Adams, and Does 26 through 30.

## EIGHTH CAUSE OF ACTION

### Defendant Correctional Medical Group Companies, Inc.

### Municipal Liability for Violation of Plaintiff's Constitutional Rights
### (Deliberate and Callous Disregard for Inmate Medical Problems)

101.    Plaintiff hereby incorporates by reference paragraphs 1 through 50, inclusive, as though set forth fully herein.

102.    Defendant CMGC has failed to either follow the PPPs adopted by Defendants Nevada County and NCSD and/or failed to establish and follow its own comparable policies, practices and procedures for the timely and effective provision of medical services for detainees and inmates at the Jail.

103.    Defendant CMGC has failed to adequately train its personnel in the PPPs and/or the applicable PPPs or its own policies, practices, and procedures regarding the timely and effective provision of medical care for inmates.

104.    Defendant CMGC has failed to adequately monitor or enforce the applicable PPPs and/or its own policies, practices, and procedures for the timely and effective provision of medical care for inmates at the Jail.

105.    Defendant CMGC has failed to adequately supervise its personnel regarding

the timely and effective provision of medical care for inmates at the Jail.

106.    Plaintiff is aware of other instances of deliberate and callous indifference by Defendant CMGC to the medical needs of inmates, including the tort claim filed by Sonya Cheyenne Cavendar on or about November 13, 2018, a true and correct copy of which as attached hereto as Exhibit 5.   The deliberate and callous indifference experienced by Plaintiff and Ms. Cavender demonstrate a persistent pattern of wrongful conduct by Defendant CMGC.

107.    It was known and/or obvious to Defendant CMGC that the acts and omissions described in paragraphs 101 to 106 would be likely to cause serious violation of the constitutional rights of inmates to timely and effective medical care.

108.    The acts and omissions in paragraphs 101-106 were done under the color of state law and they were the direct and proximate cause of the violation of the constitutional rights of Plaintiff.  Plaintiff is informed and believes, and on that basis alleges, that such acts and omissions existed for a substantial period prior to the institution of this action and that these acts and omissions continue until the present time.  As a consequence, Defendant CMGC's acts and omissions in paragraphs 101-106 constitute deliberate indifference to, and a callous disregard for, the constitutional rights of inmates in the Nevada County Jail.

109.    As a direct and proximate result of the wrongful acts and omissions of Defendant CMGC as set forth above, Plaintiff has sustained general damages of an estimated $1,500,000, according to proof, including, but not limited to: (a) the serious physical pain and suffering from the daily repeated injury to his body; (b) the severe emotional and mental distress caused by the daily infliction of physical and psychological pain, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) the cost of medical treatment; (d) the cost of emotional and psychological therapy; and (e) the loss of future

economic damages to permanent physical disability.

110.   As a direct and proximate result of the foregoing conduct of CMCG, Plaintiff has been forced to file this action under 42 U.S.C. §1983, and is entitled to recover his attorneys fees and costs under 42 U.S.C. §1988.

## NINTH CAUSE OF ACTION

### Defendants Nevada County, NCSD, CMGC, and Does 31-40

### Conspiracy to Violate Plaintiff's Constitutional Rights Under 42 U.S.C . §1983

111.   Plaintiff hereby incorporates by reference paragraphs 1 through 50, inclusive, as though set forth fully herein.

112.   Plaintiff is informed and believes, and thereon alleges, that Defendants Nevada County, NCSD, CMGC, and Does 31-40 agreed and knowingly and willfully conspired among themselves to perpetrate the unlawful conduct described in the Fourth through Sixth and Eighth causes of action.

113.   As a direct and proximate result of the wrongful acts and omissions of Defendants Nevada County, NCSD, CMGC and Does 31-40 as set forth above, Plaintiff has sustained general damages of an estimated $1,500,000, according to proof, including, but not limited to: (a) the serious physical pain and suffering from the daily repeated injury to his body; (b) the severe emotional and mental distress caused by the daily infliction of physical and psychological pain, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) the cost of medical treatment; (d) the cost of emotional and psychological therapy; and (e) the loss of future economic damages to permanent physical disability.

114.   As a direct and proximate result of the foregoing conduct of Defendants Nevada County, NCSD, CMGC and Does 31-40, Plaintiff has been forced to file this action under 42 U.S.C. §1983, and is entitled to recover his attorneys fees and costs

under 42 U.S.C. §1988.

# VI.
## STATE LAW CLAIMS

### TENTH CAUSE OF ACTION

**Defendants Grizzell, Herrera, McCormack, and Does 1-10**

**Intentional Infliction of Emotional Distress**

115.    Plaintiff hereby incorporates by reference paragraphs 1 through 50, inclusive, as though set forth fully herein.

116.    The acts and omissions of Defendants Grizzell, Hererra, McCormack, and Does 1 through 10 described in paragraphs 27-34 was extreme and outrageous conduct directed at Plaintiff that was calculated to cause Plaintiff severe emotional distress or was done with substantial certainty that Plaintiff would suffer severe emotional injury.

117.    As the direct result of the foregoing acts and omissions of Defendants Grizzell, Herrera, McCormack, and Does 1 through 10, Plaintiff suffered significant emotional and psychological damage.

118.    As a direct and proximate result of the foregoing acts and omissions of Defendants Grizzell, Hererra, McCormack, and Does 1 through 10, Plaintiff has sustained general damages of an estimated $1,000,000, according to proof, including, but not limited to: (a) severe emotional and mental distress, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; and (b) the cost of emotional and psychological therapy.

119.    The foregoing acts and omissions of Defendants Grizzell, Hererra, McCormack, and Does 1 through 10 were committed with unbridled malice that was despicable and done with intentional disregard for the emotional and psychological pain, suffering, and trauma it would cause Plaintiff.  As a result,

1  punitive damages should be awarded against Defendants Grizzell, Hererra,

2  McCormack, and Does 1 through 10.

### ELEVENTH CAUSE OF ACTION

**Defendants Andrea Boucher, Jessica Limme, Jordan Dean,
Laurie Adams, and Does 26 through 30**

### Intentional Infliction of Emotional Distress

120.    Plaintiff hereby incorporates by reference paragraphs 1 through 50,
inclusive, as though set forth fully herein.

121.    The acts and omissions of Defendants Boucher, Limme, Dean, Adams, and
Does 26 through 30 described in paragraphs 36-44 was extreme and outrageous
conduct directed at Plaintiff that was calculated to cause Plaintiff severe emotional
distress or was done with substantial certainty that Plaintiff would suffer severe
emotional injury.

122.    As the direct result of the foregoing acts and omissions of Defendants
Boucher, Limme, Dean, Adams, and Does 26 through 30, Plaintiff suffered
significant emotional and psychological damage.

123.    As a direct and proximate result of the foregoing acts and omissions of
Defendants Boucher, Limme, Dean, Adams, and Does 26 through 30, Plaintiff has
sustained general damages of an estimated $1,000,000, according to proof,
including, but not limited to: (a) severe emotional and mental distress, including
feelings of helplessness, anxiety, humiliation, and the loss of a sense of security,
dignity, and pride; (b) the cost of emotional and psychological therapy.

124.    The foregoing acts and omissions of Defendants Boucher, Limme, Dean,
Adams, and Does 26 through 30 were committed with unbridled malice that was
despicable and done with intentional disregard for the emotional and psychological
pain, suffering, and trauma it would cause Plaintiff.  As a result, punitive damages

1  should be awarded against Defendants Boucher, Limme, Dean, Adams, and Does 26

2  through 30.

3  ## TWELFTH CAUSE OF ACTION

4  ### Defendants Grizzell, Herrera, McCormack, and Does 1 through 20

5  ### Negligence

6  125.    Plaintiff hereby incorporates by reference paragraphs 1 through 50,

7  inclusive, as though set forth fully herein.

8  126.    Defendants Grizzell, Herrera, McCormack, and Does 1 through 20 were

9  correctional officers responsible for the booking, processing, housing, and control of

10  detainees and inmates at the Jail.  As a consequence, these Defendants had a duty

11  to exercise their authority and dominion over, and use of force against, Plaintiff in a

12  reasonable manner.

13  127.    Defendants Grizzell, Herrera, McCormack, and Does 1 through 20 breached

14  the foregoing duty by the acts and omissions described in paragraphs 27-44.

15  128.    As the direct result of the foregoing breach by Defendants Grizzell, Herrera,

16  McCormack, and Does 1 through 20 of their duty to Plaintiff, Plaintiff suffered

17  serious physical and mental injury.

18  129.    As a direct and proximate result of the foregoing acts and omission of

19  Defendants Grizzell, Herrera, McCormack, and Does 1 through 20, Plaintiff has

20  sustained general damages of an estimated $1,000,000, according to proof,

21  including, but not limited to: (a) the serious physical pain and suffering from the

22  injuries to his body; (b) the severe emotional and mental distress, including feelings

23  of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity,

24  and pride; (c) the cost of medical treatment; and (d) the cost of emotional and

25  psychological therapy.

26  130.    The foregoing acts and omissions of Defendants Grizzell, Herrera,

27

28                                          31

McCormack, and Does 1 through 20 were committed with a reckless and callous disregard for the emotional and psychological pain, suffering, and trauma it would cause Plaintiff that was despicable.  As a result, punitive damages should be awarded against Defendants Grizzell, Herrera, McCormack, and Does 1 through 20.

### THIRTEENTH CAUSE OF ACTION

**Defendants Grizzell, Herrera, McCormack, and Does 1 through 20**

**Interference With Plaintiff's Constitutional Rights
Under California Civil Code §52.1(b)**

131.    Plaintiff hereby incorporates by reference paragraphs 1 through 50, inclusive, as though set forth fully herein.

132.    Defendants Grizzell, Herrera, McCormack, and Does 1 through 20 committed acts and omissions that constituted threats, intimidation, and coercion directed at Plaintiff in violation of : (a) Plaintiffs right to seek redress of his grievances under the US and California Constitutions; (b) Plaintiff's substantive due process right to be free of punishment prior to adjudication of the charges for which Plaintiff was to appear under the US Constitution; (c) Plaintiff's rights under Article 1, Section 7 & 17 of the California Constitution; and (d) Plaintiff's right to timely and effective medical care.

133.    As a direct and proximate result of the foregoing acts and omission of Defendants Grizzell, Herrera, McCormack, and Does 1 through 20, Plaintiff has sustained general damages of an estimated $1,500,000, according to proof, including, but not limited to: (a) the serious physical pain and suffering; (b) the severe emotional and mental distress, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) the cost of medical treatment; and (d) the cost of emotional and psychological therapy.

134.    Pursuant to California Civil Code §52(a) and §52.1(b), Plaintiff is entitled to treble the amount of consequential damages that are proven.

1   135.   As the direct and proximate result of the foregoing conduct of Defendants

2   Grizzell, McCormack, and Does 1 through 20, Plaintiff is entitled to recover his

3   costs and attorneys fees under Civil Code § 52(b) and § 52.1(h).

4   ## FOURTEENTH CAUSE OF ACTION

5   **Defendants Grizzell, Herrera, McCormack, and Does 1 through 15**

6   **(Failure to Provide Medical Care Under GC §845.6)**

7   136.   Plaintiff hereby incorporates by reference paragraphs 1 through 50,

8   inclusive, as though set forth fully herein.

9   137.   Defendants Grizzell, Herrera, McCormack, and Does 1 through 20 were

10  public employees that had responsibility to provide medical care to inmates under

11  Government Code §845.6.

12  138.   Defendants Grizzell, Herrera, McCormack, and Does 1 through 20 failed to

13  take reasonable action to provide Plaintiff with medical care.  As the direct result of

14  this failure, Plaintiff suffered serious physical and mental injury.

15  139.   As a direct and proximate result of the foregoing acts and omissions of

16  Defendants Grizzell, Herrera, McCormack, and Does 1 through 20, Plaintiff has

17  sustained general damages of an estimated $1,500,000, according to proof,

18  including, but not limited to: (a) the serious physical pain and suffering from the

19  injuries to his body; (b) the severe emotional and mental distress, including feelings

20  of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity,

21  and pride; (c) the cost of medical treatment; and (d) the cost of emotional and

22  psychological therapy.

23

24  ## FIFTEENTH CAUSE OF ACTION

25  **Defendants Royal, McCormack, and  Does 21-25**
    **Negligent Supervision Liability**

26  140.   Plaintiff hereby incorporates by reference paragraphs 1 through 50,

27

28  33

1   inclusive, as though set forth fully herein.

2   141.   Defendants Royal, McCormack, and  Does 21-25 were supervisors for the Jail

3   and they were responsible, directly or indirectly, in whole or in part, for the

4   supervision of Defendants Grizzell and Does 1 through 20.   As a consequence,

5   Defendants Royal, McCormack, and Does 21-25 had a duty to supervise Defendants

6   Grizzell and Does 1 through 20 in a reasonable manner, including in a manner that

7   would have prevented the use of excessive force against a detainee or inmate at the

8   Jail.

9   142.   Defendants Royal, McCormack, and Does 21-25 breached the foregoing duty

10   by failing to supervise Defendants Grizzell and Does 1 through 20 in a reasonable

11   manner.

12   143.   As a direct and proximate result of the foregoing acts and omissions of

13   Defendants Royal, McCormack, and Does 21-25 as set forth above, Plaintiff has

14   sustained general damages of an estimated $1,500,000, according to proof,

15   including, but not limited to: (a) the serious physical pain and suffering from the

16   daily repeated injury to his body; (b) the severe emotional and mental distress

17   caused by the daily infliction of physical and psychological pain, including feelings

18   of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity,

19   and pride; (c) the cost of medical treatment; (d) the cost of emotional and

20   psychological therapy; and (e) the loss of future economic damages to permanent

21   physical disability.

22   144.   The foregoing acts and omissions of  Defendants Royal, McCormack, and

23   Does 21-25 were committed with a wanton and callous disregard  that was

24   despicable and done with full knowledge of the physical and mental pain and

25   suffering to Plaintiff.  Accordingly, punitive damages should be awarded against

26   Defendants Royal, McCormack, and Does 21-25.

27

28                                         34

## SIXTEENTH CAUSE OF ACTION

### Defendant Nevada County

### Respondeat Superior Liability Under California Government Code §815.2(a) And/Or 815.6

145.    Plaintiff hereby incorporates by reference paragraphs 1 through 50, inclusive, as though set forth fully herein.

146.    Defendant Nevada County, which operates the NCSD and is the employer of Defendants Royal, Grizzell, McCormack, and Does 1-20, has full authority to train, supervise, and direct the actions of each of these defendants.  Defendants Grizzell, McCormack, and Does 1 through 20 in their official capacities and in the performance of their duties engaged in the acts and omissions alleged in paragraphs 27-44.

147.    Under California Government Code §815.2(a), Nevada County is liable for any injury that is proximately caused by the act or omission of its personnel within the scope of their duties, including all of the acts and omissions alleged in the First through Fifth Causes of Action.

148.    As a direct and proximate result of the wrongful acts and omissions of omissions of Defendants Grizzell, McCormack, and Does 1 through 20 for which Defendant Nevada County is liable under the doctrine of *respondeat superior* and/or California Government Code §815.6, Plaintiff has sustained general damages of an estimated $1,500,000, according to proof, including, but not limited to: (a) the serious physical pain and suffering; (b) the severe emotional and mental distress, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride; (c) the cost of medical treatment; and (d) the cost of emotional and psychological therapy.

35

## SEVENTENTH CAUSE OF ACTION

### Defendant CMGC, Andrea Boucher, Jessica Limme, Jordan Dean, Laurie Adams, and Does 26-30

### Medical Malpractice

149.   Plaintiff hereby incorporates by reference paragraphs 1 through 50, inclusive, as though set forth fully herein.

150.   Defendants CMGC, Boucher, Limme, Dean, Adams, and Does 26-30 were responsible for providing medical care for inmates at the Jail that met professional medical practices and standards.

151.   Defendants CMGC, Boucher, Limme, Dean, Adams, and Does 26-30 failed to comply with professional medical practices and standards in the treatment of Plaintiff's injuries by, *inter alia*, failing to: (a) diagnose Plaintiff's injuries to his right leg; (b) send Plaintiff for emergency care of his right leg or otherwise provide emergency medical treatment for Plaintiff's injuries; (c) provide Plaintiff with the means to not bear weight on his right leg while he was in custody at the Jail.

152.   As a direct and proximate cause of this negligence and failure to meet applicable professional standards of care, Plaintiff suffered additional injury to his right leg and additional pain and suffering.

153.   The foregoing acts and omissions of Defendants CMGC, Boucher, Limme, Dean, Adams, and Does 26 through 30 were committed with callous and wanton disregard that was despicable and done with full knowledge of the physical and mental pain and suffering to Plaintiff.  As a result, punitive damages should be awarded against Defendants CMGC, Boucher, Limme, Dean, Adams, and Does 26 through 30.

## VII.

## PRAYER

**Wherefore**, Plaintiff prays for judgment against Defendants as follows:

1.      For general, consequential, and special damages in the sum set forth in each count according to proof;

2.      For punitive damages in a sum according to proof in Counts 1-5, 7-8, 10-12, 15, and 17;

3.      For reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988 in Counts 1-9;

4.      For reasonable attorney's fees and costs pursuant to California Civil Code §51 and §52 in Count 13;

5.      For treble damages (3x consequential) in Count 13;

6.      For cost of suit herein incurred for all counts; and

7.      For such other and further relief as the Court deems just and proper.


Dated: November 30, 2018                    Respectfully,



By:  /s/  Patrick H. Dwyer
Patrick H. Dwyer, SBN 137743
P.O. Box 1705; 17318 Piper Lane
Penn Valley, CA  95946
Tel: (530) 432-5407
Fax: (530) 432-9122
pdwyer@pdwyerlaw.com